UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:95 CR 137 (JCH) |
| ) | |
| GERALD MINER, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

The matter is before the Court on Defendant Gerald Miner's ("Miner")Amended Motion for Return of Property Pursuant to Fed. R. Crim. P. 41(g) (Doc. No. 264), filed September 20, 2006. The Court held an evidentiary hearing in two parts on May 1, 2007 and May 7, 2007. (Doc. No. 278-79). The matter is now ready for a decision.

## BACKGROUND

During 1992-1994, Miner was arrested multiple times on drug and gun-related charges. (Presentencing Report ("PSR"), Doc. No. 211). Miner was convicted on seven counts and ultimately sentenced to a 300 month term of imprisonment. (Am. J., Doc. No. 236). Miner alleges that United States currency was seized from him during three different arrests, but was never returned. (Am. Mot. for Return of Property, Doc. No. 264). The factual circumstances behind each arrest are as follows.

December 30, 1992

On this date, Miner was arrested at 6220 Bailey[1] by members of the North Central Municipal Enforcement Group[2] ("MEG Unit"). (May 1, 2007 Hearing Tr. at pg. 8). Miner contends that $4500 was seized by the MED Unit. (Id.). At the evidentiary hearing, Miner stated that he hired an attorney to recover these funds. (Id. at pg. 21-22). Miner also acknowledged that the police report stated that only $424.75 was taken from him. (Id. at pg. 21). Miner failed to produce any documentation showing that the United States of America (the "Government") ever possessed these funds. (Id. at pg. 22-23).

January 6, 1993

On this date, Miner was arrested after the MEG Unit conducted a lawful search of his residence at 1505 Kappel Street. (PSR, Doc. No. 211 ¶ 12). Miner testified that $6500 was seized; however, Drug Enforcement Agency ("DEA") documentation and his Presentence Report show that $4730 was seized. (Id; Resp., Doc. No. 269 Ex. A1-A2). Miner testified that he never received notice of the forfeiture proceedings from the DEA. (May 1, 2007 Hearing Tr. at pg. 13).

The Government called Ms. Marie Dyson ("Dyson"), a DEA employee specializing in forfeitures, at the evidentiary hearing. Dyson testified that the DEA sent a notice of forfeiture, return receipt requested, to Miner at 1505 Kappel Street. (May 7, 2007 Hearing Tr. at pg 3, 6-8; Resp., Doc. No. 269 Ex. A2, A5). The DEA received a return receipt signed by Gerald Miner. (Id. at A5). Miner acknowledges that the signature on the return receipt is his, but denies receiving a notice of forfeiture. (May 1, 2007 Hearing Tr. at pg. 13). Additionally, notice was placed in a newspaper, likely USA Today. (Id.). Dyson testified that nothing aside from the address connects the return receipt to the forfeiture notice. (May 7, 2007 Hearing Tr. at pg. 9-10).

---

[1] Unless otherwise indicated, all addresses are located in St. Louis, Missouri.

[2] The MEG Unit is a local law enforcement entity. (May 1, 2007 Hearing Tr., pg. 21).

February 11, 2004

On this date, Miner was again arrested by the MEG Unit (Resp., Doc. No. 269 Ex. B-1). Miner was then taken to the Northwoods Police Station where $3220 was seized from his person. (May 1, 2007 Hearing Tr. at pg. 13). The money was turned over to the Federal Bureau of Investigation ("FBI"), which initiated the forfeiture proceeding on March 22, 1994. (Resp., Doc. No. 269 Ex. B-1). Miner alleges that he never received notice of the forfeiture proceeding. (Am. Mot., Doc. No. 264 pg. 2). Miner testified that he tried to get the seized funds back, but was told by his attorney that it would not be returned until he was charged with an offense. (Id. at pg. 15). Miner also testified that an agent[3] left a card at 6869 Lowell, which was where he was living at the time. (Id. at pg. 16).

In response, the Government offered the testimony of Michael Papes, an Investigative Support Specialist with the FBI who handles forfeiture matters. (Id. at pg. 29). Papes testified that on April 8, 1994 four letters were sent to Miner informing him of the forfeiture proceeding. (Id. at pg. 29-39; Hearing Ex. B-2-B4, C-E). These letters were sent to Miner at 6222 Bailey, 3857 Kennerly, 1552 Estrada Drive, and 2121 Edmund. (Id.). These addressees were obtained from the Department of Revenue's computer system, Miner's criminal history, and criss-cross directories. (Id. at pg. 33). The letters all contain the seizure reference number 3730-94-F-0026. (Id.). Each letter was sent return receipt requested. (Id.). The Government received a return receipt for the 6222 Bailey letter. (Id. at Ex. B-4). The return receipt had the reference number SL:3790-94-F-0026 printed on it. (Id.). The receipt was signed by "Gerald Miner," but Miner denies that the signature is his. (May 1, 2007 Hearing Tr. pg. 16). Before declaring the property forfeited, the FBI also posted notice in the New York Times on three different dates. (Id. at B-1).

---

[3]The Court presumes that Miner is referring to an FBI agent.

**DISCUSSION**

The Federal Rules of Criminal Procedure state that "a person aggrieved ... by the deprivation of property may move for the property's return."[4] Fed. R. Crim. P. 41(g). An evidentiary hearing is required when there is a factual dispute regarding who "has custody or is entitled to possession of the subject property." United States v. Timley, 443 F.3d 615, 625 (8th Cir. 2006). As an initial matter, the plaintiff must show that he has some interest in the property[5]. United States v. Manelli, 667 F.2d 695, 699 (8th Cir. 1981). Second, the plaintiff must show that the Government was, or is, in possession of the funds. United States v. Marshall, 338 F.3d 990, 995 (9th Cir. 2003); Jackson v. United States, No. 1:03CV160 ERW, 2006 WL 3803650, at *2 (E.D. Mo. Nov. 16, 2006) (burden on plaintiff to show the government had possession). Plaintiff must show actual possession of the funds or constructive possession, meaning that the Government either (1) used the property as evidence in a federal prosecution, or (2) directed state officials to seize the property in the first place. United States v. Copeman, 458 F.3d 1070, 1072 (10th Cir. 2006). A state deferring to federal prosecution does not create constructive possession. Id.

A motion for return of property is properly denied "(1) if the defendant is not entitled to lawful possession of the seized property, (2) if the property is contraband or subject to forfeiture, or

---

[4] The Court treats a postconviction motion for return of seized property as a civil equitable action. Ball v. United States, 193 F.3d 998, 1000 (8th Cir. 1999). Furthermore, the Court may hear this case because it "has subject matter jurisdiction ancillary to its criminal jurisdiction." Thompson v. Covington, 47 F.3d 974, 975 (8th Cir. 1995).

[5] A motion to set aside a forfeiture, such as the one presently before the Court, must be filed within five years after the date of final publication of the notice of the seizure of the property. See Barton v. United States, No. 4:05-cv-6 CAS, 2005 WL 1463476, at 1 (E.D. Mo. June 20, 2005) (citing 18 U.S.C. § 983(e)(3)). Although it appears that Miner filed his motion well outside the five year time period, the Court believes that most economical way to rule on the matter before the Court is to discuss the merits of Miner's claims.

(3) if the Government has a continuing evidentiary need for the property." United States v. Wilson, 8 Fed. Appx. 593, 594 (8th Cir. 2001). The Government bears the burden of proving it has a legitimate reason for retaining the property. United States v. Mills, 991 F.2d 609, 612 (9th Cir. 1993) (cited with approval in United States v. Vanhorn, 296 F.3d 713, 719 (8th Cir. 2002)).

The Government may administratively forfeit property, such as currency, seized during law enforcement activities. 21 U.S.C. § 881; see 19 U.S.C. §§ 1607-1609. The due process clause of the Fifth Amendment provides that no person shall "be deprived of ... property, without due process of law." U.S. Const. Amend. V. An individual facing forfeiture risks being deprived of his property and is entitled to notice and an opportunity to be heard. See Dusenbery v. United States, 534 U.S. 161, 167 (2002). Due process does not require actual notification of the pending action. Nunley v. Dep't of Justice, 425 F.3d 1132,1136-37 (8th Cir. 2005). Rather, due process is satisfied if the method of notice "is reasonably calculated, under all of the circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. at 1137 (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). Notice by mail is ordinarily presumed to be constitutionally sufficient, but there is no rule that mailed notice need always be considered adequate. Nunley, 425 F.3d at 1137. With these principles in mind, the Court will now discuss each forfeiture.

**A.**     **December 30, 1992 Property**

Upon consideration, Miner has not shown that the Government possessed the $424.75 seized on December 30, 1992 because, aside from his conclusory allegations, he has not provided the Court with any evidence to support his claim. Jackson, 2006 WL 3803650, at *2. Miner claimed that these funds were referred to in his criminal trial, but he has not provided the Court with any copies of the pertinent transcripts. See Woods v. Wills, 400 F. Supp. 2d 1145, 1151 (E.D. Mo. 2005) (holding

district court is not obligated to sift through the record to find facts supporting defendant's claim). The Government does not have to return property it never possessed. United States v. White, 718 F.2d 260, 261 (8th Cir. 1983). Thus, Miner's claim for the return of the currency seized on December 30, 1992 is denied.

**B.      January 6, 1993**

Here, the evidence shows that Miner had a possessory interest in the $4730 that was seized, and the Government had actual possession of the currency. The Government asserts that the funds were properly forfeited. The determination of Miner's claim hinges on whether the Government's notice comported with the requirements of due process.

Upon consideration, the Court finds that Miner was provided with notice. Miner acknowledges that the signature on the return receipt is his. Dyson testified that the return receipt was attached to the forfeiture notice. The letter was sent to 1505 Kappel, the address that Miner was living at when arrested. Based on these facts, the Court finds that Miner received notice and his claim is denied.

**C.      February 11, 1994**

Here, the evidence shows that Miner had a possessory interest in the $3220, and the Government had actual possession of this currency. The Government asserts that the funds were properly forfeited. The determination of Miner's claim again hinges on whether the Government's notice comported with the requirements of due process.

Upon consideration, the Court finds that the Miner received notice. Miner acknowledges that the signature contained in Exhibit A5 is his. (May 1, 2007 Hearing Tr. at pg. 19). Miner, however, denies that a similar signature, contained in Exhibit B4, is his. (Id. at pg. 16). The trier of fact, in this case the Court, may authenticate a writing specimen by comparing it with an authenticated writing

sample. Fed. R. Evid. 901(b)(3). Despite Miner's claims to the contrary, the signatures found in Exhibits A5 and B4 appear to be written by the same person. Thus, Miner received actual notice of the forfeiture proceeding. Miner's claim for the return of $3220 is denied.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Gerald Miner's Amended Motion for Return of Property Pursuant to Fed. R. Crim. P. 41(g) is **DENIED**.

**IT IS FURTHER ORDERED** that all other pending motions (Doc. No. 245, 254[6], 265) are **DENIED** as moot.

Dated this 31st day of May, 2007.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[6]This motion asked for a clarification of the order appointing counsel. The Court provided the necessary clarification in Doc. No. 255.